STATE OF CONNECTICUT *v.* QUENTIN V. STEPNEY
(AC 25415)

McLachlan, Harper and Peters, Js.

Argued November 17, 2005—officially released February 28, 2006

*Andrew Stephen Knott,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Brian Preleski,* senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Quentin V. Stepney, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] The defendant claims that the court improperly admitted statements allegedly made by the minor victim under the medical treatment exception to the hearsay rule. We affirm the judgment of the trial court.

[1] The court sentenced the defendant to a total effective term of incarceration of thirty years, followed by ten years of special parole.

The jury reasonably could have found the following facts. On September 12, 2002, the victim was fifteen years of age. At approximately 2:30 p.m., she arrived home from school. She was home alone, speaking on the telephone with her friend, A, when the defendant rang the doorbell at approximately 3 p.m. She and the defendant were acquaintances; the defendant was a friend of A and had provided handyman services for the victim's mother. The defendant told the victim that he was there to use the bathroom; he asked her to permit him to enter the home. The victim permitted the defendant to speak with A on the telephone and ultimately complied with the defendant's request to enter the home.

Upon entering the home, the defendant asked the victim to research something for him on her computer and went into the bathroom. When the defendant returned from the bathroom, the victim was in her bedroom. The defendant entered the bedroom, exposed his penis and told the victim that there was "something he has been wanting to do, but . . . never got the chance to." The victim attempted to leave the room, but the defendant forcefully prevented her from doing so. The defendant struck the victim. The defendant pushed the victim onto her bed, where he pulled her pants and underwear to her knees. Despite the victim's verbal and physical protests, the defendant partially inserted his penis into the victim's vagina and performed cunnilingus on the victim. The defendant thereafter took possession of a photograph of the victim that was in the bedroom, warned the victim that he would "get back" at her if she told anyone about what had occurred and left the victim's home.

The state presented evidence that, later that day, the victim reported these events to her mother and others and that, during the evening hours of September 12, 2002, the victim was examined at New Britain General

Hospital. Among the evidence presented by the state was the testimony of Lynn Dizney, a registered nurse on the hospital's emergency room staff. Dizney is also a certified sexual assault nurse examiner. Dizney testified that she interviewed and examined the victim at the hospital; her examination included the use of a sexual assault crime kit to examine the victim's body for evidence. Dizney testified that her interview and examination was for the purpose of providing medical treatment to the victim.

The prosecutor asked Dizney to relate what she learned during her interview of the victim. The following colloquy ensued:

"[The Prosecutor]: And did [the victim] describe to you the sexual assault?

"[The Witness]: Yes, she did.

"[The Prosecutor]: And what did [the victim] tell you?

"[The Witness]: She—she told me that she was home alone, and a man by the name of Q, whom she knew, she referred to him as her girlfriend's coach, had come into the house, actually she didn't want to let him in because her mother had given her very strict rules not to let anybody into the house when nobody was home. But he got into the house, he kind of—she told me that he pushed her out of the way, kind of in like a playful manner, and asked her if he could use the bathroom and also wanted her to go onto the Internet to get some type of, she referred to it as some type of a painting that he wanted to look at. He said to her, don't worry about [it]; it's going to be okay with your mother. So, he kind of pushed her out of the way and let [himself] in.

"She then proceeds to tell me that she went into the bedroom where her computer is and tried to get this painting that she referred to his name as Q wanted, and then Q also asked to use the bathroom, so he went

into the bathroom and she had gone into the bedroom. When—Q then, she told me, Q came out of the bathroom and he came into her bedroom, because that's where she was, she was on the Internet, trying to get the material that he wanted from her, and picked up his shirt, and he told me that—she told me that his penis was sticking out of his pants.

"At that point, she told me that he told her that [he has] always wanted to do this, but never had a chance, and also told me that he put his arms on her shoulders and he kind of pushed her to the bed. . . .

"She—she then told me that he—he had pushed her on the bed, and he started rubbing his penis in between her legs in like a very kind of motion of going back and forth. And he also told—she also told me that he took the tip of his penis and tried to put it in her vagina. And also [she] told me he also had tried to—he took his tongue and also tried to lick her vagina, she told me also.

"[The Prosecutor]: Now, with respect to—with respect to that interview with the victim, what was her demeanor while she's telling you this?

"[The Witness]: She was very, very, very quiet, you know, and she was very detailed in her explanation to me. She was very, very detailed. I didn't—I just asked—I usually ask them what happens—what happened, and she just kept on coming out with more and more, you know a more and more the interview process and what, I documented that she wrote."

The defendant's attorney objected to the foregoing testimony on the ground that it was "too detailed with respect to the hearsay statements from the complainant" and that the statements were not admissible as constancy of accusation evidence under *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc).

The prosecutor responded that the state did not offer Dizney's testimony as constancy of accusation evidence, but as evidence of statements made by the victim to a medical provider for the purpose of seeking medical treatment. See Conn. Code Evid. § 8-3 (5). The court overruled the defendant's objection.

The defendant claims that the court's ruling was improper because the testimony was not admissible under the medical treatment exception to the hearsay rule. The defendant argues: "[T]he admitted testimony went far beyond the testimony allowed for medical and psychological treatment, the defendant's identity and the cause of the injury. Dizney described the setting in detail. She told the jury of the complainant's overall demeanor. She provided a moment by moment account of the events leading up to the alleged incident, even attributing quotes to the defendant. She testified in grisly detail [about] an alleged assault. In short, she testified as to an account astonishingly identical to, and almost as descriptive as, that of the complainant's. Such testimony did not bear on either the physical or the psychological treatment of [the complainant] and, thus, was not germane to her treatment. Therefore, it exceeded the bounds of the medical treatment and diagnosis exception and, thus, was wrongfully proffered by the state and improperly admitted by the trial court."

The defendant acknowledges that he did not object at trial to the admission of that testimony under the medical treatment exception to the hearsay rule. Our review of the record confirms that the defendant's objection to the evidence was limited to its admissibility as constancy of accusation evidence. The defendant seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

A claim is reviewable under *Golding* if the record is adequate to review the claim, and "the claim is of

constitutional magnitude alleging the violation of a fundamental right . . . ." Id., 239–40. The defendant argues that the ruling was not merely improper on evidentiary grounds, but that the admission of the testimony deprived him of his right to confrontation under the sixth amendment to the United States constitution.

As a preliminary matter, we observe that the defendant has done little more than assert that his claim is constitutional in nature. In his principal brief, the defendant states that the victim's statements to Dizney "were not germane to [the victim's] treatment, and therefore [their] admission was a violation of the defendant's constitutional right to confrontation and, therefore, improper." The defendant thereafter asserts that "it is well established that the claim alleges a constitutionally protected fundamental right, given that the right to confront one's accuser is enshrined in the sixth amendment to the United States constitution." The defendant sets forth the standard of review applicable to a trial court's evidentiary rulings and analyzes the admissibility of the evidence on evidentiary grounds, arguing that the evidence was not admissible under the medical treatment exception to the hearsay rule. The defendant urges us to conclude that the admission of the evidence was improper, that it permitted the prosecutor "to stray from the rules of evidence" and that it violated the defendant's "rightful opportunity to present a complete defense in violation of the sixth amendment to the United States constitution."

The defendant has not provided this court with any analysis of the constitutional claim he has raised, and we will not formulate such an analysis on his behalf.[2]

_____

[2] The only semblance of a constitutional analysis appears in the defendant's reply brief. The defendant therein argues that his right to confront the victim was violated because Dizney testified after the victim testified and that he, therefore, was precluded from cross-examining the victim concerning the statements that Dizney attributed to her. We observe that the proper presentation of an issue on appeal precludes appellants from mentioning a claim in their principal brief and raising legal arguments in support

The defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right. See *State* v. *DeJesus*, 91 Conn. App. 47, 69–70, 880 A.2d 910 (2005). "[O]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." *State* v. *Golding*, supra, 213 Conn. 241. The defendant's unpreserved evidentiary claim fails under *Golding*'s second prong.

The judgment is affirmed.

In this opinion the other judges concurred.

---

of such claim for the first time in their reply brief. Arguments cannot be raised for the first time in a reply brief. See *State* v. *Peeler*, 271 Conn. 338, 373 n.36, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). Even if the arguments asserted in the reply brief were proper, they would not persuade us that the defendant's claim is constitutional in nature. The defendant has not set forth a logical nexus between the state's presentation of Dizney's testimony and a deprivation of his right to cross-examine the victim fully and effectively. The mere fact that Dizney testified after the victim did not deprive the defendant of his right to cross-examine the victim fully and effectively. "[W]hether to allow a recall of a witness for further cross-examination is within the discretion of the trial court . . . ." *State* v. *Martin*, 77 Conn. App. 778, 817, 825 A.2d 835, cert. denied, 266 Conn. 906, 832 A.2d 73 (2003). The record does not reflect either that the defendant sought to conduct further cross-examination of the victim after Dizney testified or that the court in any relevant way restricted the defendant's right to cross-examine the victim.