## STATE OF CONNECTICUT *v.* CLAUDIO C.[1]
### (AC 30364)

DiPentima, C. J., and Bear and Foti, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued October 12—officially released Decemeber 21, 2010

*Frank P. Cannatelli,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,*

state's attorney, and *Helen McLellan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Claudio C., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly (1) admitted into evidence an out-of-court statement of the victim, violating his rights secured under the confrontation clause of the sixth amendment to the United States constitution,[2] as articulated by the United States Supreme Court in *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and (2) concluded that the state did not waive counts four through six of the six count, long form information because the clerk of the court initially only read counts one through three to the jury. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts, which the jury reasonably could have found, are relevant to the defendant's appeal. In 2005, the victim was ten years old and attended the fifth grade. She resided principally with her paternal aunt in an apartment that was situated above a store operated by her grandmother and grandfather, the defendant.[3] On May 25, 2005, after returning

---

[2] "The sixth amendment to the United States constitution provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . . The confrontation clause of the sixth amendment is made applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 636 n.4, 945 A.2d 449 (2008).

[3] The victim's parents divorced in 2000. After the divorce, she lived with her father, or principally with members of her father's family, until the time of the sexual assault.

home from school, the victim stopped at her grandparents' store for something to eat and then proceeded to her aunt's apartment to do her homework. That same day, the victim's father, who was on business out of state, received a call from the defendant's cell phone. The two men had a conversation regarding the location of a checkbook to which the defendant needed access.

At approximately 3:30 p.m., the victim's aunt went into the bedroom where the victim was studying and informed her that she and the victim's grandmother were going out to run an errand. Prior to leaving, the aunt gave the victim her cell phone. Shortly after the two women left, the defendant entered the bedroom. Upon entering the room, the defendant went over to the bed where the victim was sitting and removed her pants and underwear. He then removed his own pants and underwear and proceeded to get on top of the victim, cover her mouth with his hand and "[rub] his private [parts] against [the victim's private area]."[4] While the assault was occurring, the victim's father received another telephone call from the defendant's cell phone. This time, however, there was no response when he answered the call or said "hello" multiple times. The victim's father, however, could hear his daughter's voice say, "no grandpa," three times. He also was able to hear the defendant, his father, telling the victim to be quiet. Reacting to what he heard, the victim's father used a coworker's cell phone to attempt a call for help. Following the assault, the defendant pulled up his pants and went back downstairs.

The victim's father immediately attempted to call his sister, the victim's aunt. Because the aunt had given her cell phone to the victim, the victim answered the

---

[4] During direct examination, the victim identified what she meant by "private parts" through the use of anatomical diagrams depicting the body of a male and the body of a female. The victim also stated that the contact that occurred during the assault was skin to skin.

call. During the ensuing conversation, the victim's father asked her about what he heard on his cell phone, and the victim reluctantly told him about the sexual assault. He then instructed her to leave the apartment and to go to a friend's house. The victim's father then contacted his sister to inform her about what had happened and subsequently called the New Haven police department to report the assault. The police did not respond immediately, however, because the victim's father requested to be present when the police arrived to investigate. After speaking with the police, the victim's father had a telephone conversation with the defendant and confronted him about the assault. The victim's father told the defendant that he had two choices: either leave the country or face going to prison. Thereafter, the victim's father facilitated the purchase of a one way ticket that enabled the defendant to leave the country and to go to Argentina.

When he arrived home from his business trip, the victim's father chose not to follow up with the police because the defendant was no longer in the country, and he did not want his daughter to be impacted negatively by an investigation of the sexual assault. On August 12, 2005, the defendant returned to Connecticut from Argentina. By this time, the victim was living exclusively with her father in Guilford. After learning that the defendant had returned to the area and that the victim was aware of his return, the victim's father arranged for her to receive counseling from a licensed therapist at the Guilford Youth and Family Services Center. During one of the intake interviews, the victim's father informed the therapist that the victim had been sexually assaulted by the defendant. The therapist then reported the alleged assault to the department of children and families (department). The department, in turn, reported the allegations to Detective Otoniel

Reyes of the New Haven police department, who began an investigation on August 22, 2005.

On September 7, 2005, Reyes arranged for the victim to be interviewed by a multidisciplinary team at the Yale Child Sexual Abuse Clinic (clinic). Florence Mackey conducted the forensic interview, and Janet Murphy, a pediatric nurse practitioner, performed the physical examination. During the interviews, Reyes observed through a privacy glass. Once the interview with the victim was completed, Reyes contacted the defendant. After being interviewed at the New Haven police department, the defendant provided Reyes with a statement denying any wrongdoing regarding the events of May 25, 2005. Continuing his investigation, Reyes interviewed the victim's father and aunt. Following his interview with the victim's aunt, Reyes decided to interview the victim briefly one more time, this time at her school.[5] Present during this interview were the victim; Reyes; his partner, Detective William White, Jr.; and the principal and the vice principal of the school. Reyes asked the victim whether she had been told what to say during their previous interview. The victim told Reyes that everything she said during their interview was true and that no one had coached her or told her what to say. Concluding his investigation, Reyes prepared a warrant for the arrest of the defendant.

Ultimately the defendant was charged in a six count information with two counts of sexual assault in the third degree and four counts of risk of injury to a child. The jury found the defendant guilty of one count of sexual assault in the third degree and two counts of risk of injury to a child. The court sentenced him to a

---

[5] Reyes testified that during his interview with the victim's aunt, she had alluded to the fact that the victim may have been told what to say during the interview at the clinic. To ensure that his investigation was comprehensive, Reyes conducted the second interview in order to confirm that the victim had not been coached during the interview at the clinic.

total effective term of twenty-five years incarceration, execution suspended after seventeen years, with ten years of probation, to which special conditions were attached, including registration as a sex offender and conditions, psychological testing and treatment as deemed appropriate by the office of adult probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The defendant first claims that the court improperly admitted into evidence an out-of-court statement of the victim, thus violating his rights under the confrontation clause of the sixth amendment to the United States constitution as articulated in *Crawford* v. *Washington*, supra, 541 U.S. 36. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim on appeal. During direct examination, the victim identified unequivocally the defendant as the person who had sexually assaulted her on May 25, 2005, in addition to describing the manner in which the assault had taken place.[6] The victim also testified that she reiterated these details to Mackey, Reyes and Murphy during her interview at the clinic. The victim then testified that she had a subsequent conversation with Reyes at her school but was unable to remember the details of that conversation. On cross-examination, the victim was asked about her conversations with Reyes; however, she was not asked specifically what she told Reyes during their second interview.

[6] Although the majority of the victim's testimony pertained to the incident that occurred on May 25, 2005, she also discussed a similar incident that allegedly had taken place a couple of days earlier. The victim testified that on this occasion, the defendant did not remove his pants, nor did he attempt to remove her clothing. Instead, the defendant rubbed against the victim in a manner similar to that in the victim's description of the assault that occurred on May 25, 2005, although she was clothed.

On direct examination, Reyes described the details of his investigation.[7] Reyes testified that after interviewing the victim's aunt, he became aware that during his initial interview with the victim, he had failed to ask her if anyone instructed her to make statements that were untrue. Thereafter, Reyes explained that he had a brief conversation with the victim at her school. When asked to describe the second interview, Reyes said: "It was a very brief conversation. . . . I asked her . . . [d]id anyone tell you to say anything that happened that was not true, that actually didn't happen, and she looked at me without . . . blinking an eye and she told me no, that everything she said had been the truth."

On cross-examination, the defendant followed up on Reyes' interview with the victim at her school:

"Q. . . . Can you tell the jury . . . how you asked that question to her [regarding the victim's telling the truth], if you could, if you can recall?

"A. I think I—I said it earlier. I—I asked how she was doing, told her that I stopped in to—just, I needed to ask her a question . . . and I said, did anyone, at any point in time, ask you to say something that wasn't true with regard to what happened to you, and she said no and that was it. . . . It was a very short conversation and it was limited to that."

The defendant concedes that he did not object to the admission of Reyes' testimony at trial, and he now seeks review of this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the

---

[7] In his testimony about his investigation, Reyes described (1) facilitating the videotaped interview at the clinic, where he observed the interviews through a privacy glass; (2) interviewing the victim's father, the victim's uncle, the victim's grandmother and the victim's aunt; and (3) the details of an interview conducted with the defendant.

following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.

The defendant claims that the admission of the victim's extrajudicial statement, introduced through Reyes, deprived him of his right to confrontation under the sixth amendment to the United States constitution. In essence, the defendant argues that Reyes' testimony was inadmissible hearsay because (1) it was testimonial in nature[8] and (2) it occurred after the victim's testimony and, thus, effectively negated his opportunity to cross-examine her.[9] We conclude that the defendant has failed to demonstrate that this claim is of constitutional magnitude. See *State* v. *Stepney*, 94 Conn. App. 72, 79, 891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006).

"As a general matter, hearsay statements may not be admitted into evidence unless they fall within a recognized exception to the hearsay rule. . . . In the context of a criminal trial, however, the admission of a hearsay statement against a defendant is further limited by the confrontation clause of the sixth amendment." (Citation omitted.) *State* v. *Smith*, 289 Conn. 598, 618, 960 A.2d

---

[8] The state concedes that the victim's extrajudicial statement to Reyes that she had not been told how to respond during the multidisciplinary interview was testimonial.

[9] In his appellate brief, the defendant claims that because Reyes testified after the victim, "the right to confront [her] at trial was too late, [and] improperly allow[ed] the bolstering of her testimony in front of the jury." To support this argument, the defendant relies primarily on *Crawford* v. *Washington*, supra, 541 U.S. 51–52, and *Davis* v. *Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

993 (2008). "Under *Crawford* v. *Washington*, supra, 541 U.S. 68, the hearsay statements of an *unavailable witness*[10] that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence." (Emphasis added; internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 651–52, 945 A.2d 449 (2008).

It is axiomatic that in order for a *Crawford* violation to occur, the defendant must be confronted with testimony from a declarant who has been deemed unavailable. See *State* v. *Pierre*, 277 Conn. 42, 78–79, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). In *State* v. *Simpson*, supra, 286 Conn. 634, our Supreme Court clarified this principle definitively, explaining: "*Crawford* 'makes clear . . . that, when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements. . . . The [c]lause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.' " Id., 652–53, quoting *State* v. *Pierre*, supra, 78.

Turning our attention to the present case, the record reflects that the victim testified at trial. During direct examination, the victim testified that she had a second conversation with Reyes but could not recall the contents of that conversation. See footnote 10 of this opinion. Moreover, during cross-examination, the victim

[10] Our jurisprudence has held consistently that a declarant's inability to remember previous statements does not render that witness "functionally unavailable" under *Crawford*. See *State* v. *Holness*, 289 Conn. 535, 958 A.2d 754 (2008); *State* v. *Simpson*, supra, 286 Conn. 653–54; *State* v. *Pierre*, 277 Conn. 42, 86, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

was questioned about her conversations with Reyes; however, she was not asked specifically about the conversation at her school. The defendant has failed to produce any facts or point us to any authority that would have rendered the victim unavailable under *Crawford.*[11] Additionally, there is no indication that the defendant sought to conduct further cross-examination of the victim after Reyes testified or that the court, in any relevant way, interfered with his right to cross-examine the victim. See *State* v. *Stepney*, supra, 94 Conn. App. 78 n.2. Consequently, the defendant's position, which is that he was deprived of his right to cross-examine the victim fully and effectively because Reyes testified after the victim, is untenable. See id. "The mere fact that [the witness] testified after the victim did not deprive the defendant of his right to cross-examine the victim fully and effectively." Id., 79 n.2. Because the victim was available at trial to explain her statements to Reyes, the confrontation clause of the sixth amendment was not violated. See *State* v. *Simpson*, supra, 286 Conn. 652. Therefore, the defendant's claim was rendered "evidentiary in nature and, as a result . . . not entitled to *Golding* review." *State* v. *Warren*, 83 Conn. App. 446, 451, 850 A.2d 1086, cert. denied, 271 Conn. 907, 859 A.2d 567 (2004).

"The defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right. . . . [O]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." (Citation omitted; internal quotation marks omitted.) *State* v.

---

[11] We take no position as to whether the proffered testimony of the victim through Reyes was inadmissible hearsay because we determine that the defendant's claim fails to satisfy the second prong of *Golding*. See *State* v. *Golding*, supra, 213 Conn. 239–40.

*Stepney,* supra, 94 Conn. App. 79. Accordingly, the defendant's unpreserved evidentiary claim fails under the second prong of *Golding.*

II

The defendant's second claim is that the court improperly concluded that the state did not waive[12] counts four through six of the six count, long form information because the clerk of the court mistakenly read only the first three counts to the jury during the information's initial reading.[13] We note that the defen-

[12] We cannot ascertain from the defendant's appellate brief whether he is claiming that the state implicitly withdrew counts four through six or waived them entirely.

[13] The defendant was charged, by way of a six count information, with two counts of sexual assault in the third degree in violation of § 53a-72a (a) (1) (A) and four counts of risk of injury to a child in violation of § 53-21 (a) (2). In counts one through three, the state charged the defendant with one count of sexual assault in the third degree and two counts of risk of injury to a child, respectively, for events alleged to have occurred on May 25, 2005. Counts four through six were identical with the exception that the alleged assault was said to have occurred on or about May 16 through 24, 2005.

On May 13, 2008, prior to the beginning of the evidentiary portion of the trial, the clerk of the court read only the first three counts to the jury. Neither the state nor the defendant alerted the court to this omission. The trial commenced and the state proceeded to call three witnesses. During a recess, and outside the presence of the jury, the clerk informed the court of the inadvertent omission. The state requested that the remaining charges be read into the record, stating that it had not filed any amendments to the written information. The defendant objected, claiming that the court should consider counts four through six waived and that reading the omitted charges would cause the defendant undue prejudice.

The court concluded that the defendant's rights were not prejudiced as a result of the inadvertence and ordered counts four through six read to the jury after the recess. Prior to the clerk's reading the remaining charges to the jury, the court instructed the jury that, through inadvertence, the clerk previously had mistakenly read only the first three counts of the six count information. The court instructed the jury that the information was not evidence, nor could it be used to draw any negative inferences, and that each charge was separate and must be considered individually. Thereafter, counts four through six were read to the jury. On May 19, 2008, the jury returned a verdict of guilty on counts one through three and not guilty on counts four through six.

dant, in his appellate brief, has provided no standard of review, no authority and engaged in no legal analysis of this claim. Other than providing a four sentence recitation of the facts and asserting that the state's burden of proof was lessened, the defendant has failed to present us with the necessary foundation required to evaluate this claim on appeal.

"[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010); see also *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 100 Conn. App. 63, 69 n.6, 918 A.2d 889 (2007) ("[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones" [internal quotation marks omitted]), aff'd, 286 Conn. 548, 944 A.2d 329 (2008).

We conclude that the defendant's brief, in the absence of any discussion of a standard of review, legal analysis or authority regarding this claim, is wholly inadequate.

Accordingly, we decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.