STATE OF CONNECTICUT *v.* STEVEN ROSE
(AC 33014)

Robinson, Alvord and West, Js.

Argued September 13—officially released December 20, 2011

*James B. Streeto*, assistant public defender, with whom was *John Cizik, Jr.*, senior assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, *Leonard Boyle*, acting state's attorney, and *Amy Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Steven Rose, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, attempt to commit robbery in the first degree in violation of General Statutes § 53a-49 (a) (2) and § 53a-134 (a) (1), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (1). On appeal, the defendant claims that (1) the trial court impermissibly admitted into evidence the written statements made to the police by two eyewitnesses after those witnesses testified at trial, (2) the conviction of the defendant

of both felony murder and robbery in the first degree violates double jeopardy and (3) the trial court erred in not permitting the defense to impeach a witness about the specific facts regarding pending criminal charges against that witness. We affirm the judgment of the trial court.

Given the evidence presented at trial, the jury reasonably could have found the following facts. On June 2, 2007, the defendant first encountered the victim, Eugene Campagna, at the apartment of Sheila Schmidt, where the defendant entered the apartment demanding money and a hat from the victim. Schmidt left her apartment and called the police, but prior to their arrival, the defendant departed. Later in the evening, at approximately 9 o'clock at night, the defendant encountered the victim for a second time. Three different witnesses, John Bell, Robert Davis, and Angela Smith, gave their accounts of what occurred subsequently.

Bell observed the encounter from his second story apartment on Bronson Street in Waterbury, where he saw the defendant approach and call out to the victim as the victim walked toward a store on the corner. Bell observed the defendant first punch the victim in the face, then later observed the victim lying on the ground and the defendant stomping on his face. Bell then opened his window and yelled out to the defendant on the street below to stop beating the victim; however, the defendant continued to hit the victim. Bell heard the defendant tell the victim that he hoped he died, observed the defendant spit on the victim, remove a $5 bill from the victim's pocket, and attempt to pick up the victim, who did not move. Bell then called the police.

Davis, at about 9:15 p.m. that evening, was outside his Bishop Street residence with his niece near the corner store on Bronson Street where he observed the victim digging through the garbage for cans. Davis did

not witness the attack, but, two to three minutes later, he heard Bell yelling at the defendant to leave the victim alone and heard the defendant yell back at Bell that the victim owed him money. Davis saw the victim lying on the ground and observed the defendant attempting to pick up the victim by his midsection.

Smith observed the encounter between the defendant and the victim from outside the corner store on Bronson Street where she was drinking vodka. Smith observed the defendant slap, punch and throw the victim against a fence, and she shouted at the defendant to stop beating the victim. Smith saw the defendant reach into the victim's pocket and say something to the victim. Smith then saw the defendant walk away while the victim remained on the ground motionless. Thereafter, the police and an ambulance arrived on the scene where emergency treatment was given; however, the victim suffered a substantial brain hemorrhage and was pronounced dead at Saint Mary's Hospital.

The defendant subsequently was arrested and charged under a substitute information with murder in violation of General Statutes § 53a-54a (a), felony murder in violation of § 53a-54c, attempt to commit robbery in the first degree in violation of §§ 53a-49 (a) (2) and 53a-134 (a) (1), and robbery in the first degree in violation of § 53a-134 (a) (1). Following a jury trial, the defendant was convicted of the crimes of felony murder, attempt to commit robbery in the first degree and robbery in the first degree. The jury deadlocked as to the murder charge, and a mistrial was declared on that count.[1] Thereafter, the court imposed a total effective sentence of forty years incarceration.[2] This appeal followed. Additional facts will be set forth as necessary.

---

[1] The state subsequently entered a nolle prosequi as to the charge of murder.

[2] Although the court indicated at sentencing that the conviction on the counts of attempt to commit robbery in the first degree and robbery in the first degree would be merged, it nonetheless imposed a sentence of ten

I

The defendant first claims that the court improperly admitted the statements of Bell and Davis both for rehabilitative purposes and for substantive purposes. We disagree.

The following additional facts are relevant to the resolution of the defendant's claim. Bell and Davis were both questioned during direct examination about their accounts of the events of June 2, 2007, and their statements to the police. On direct examination by the state, each witness was shown a copy of his signed, sworn statement to the police, and each was marked as a state's exhibit for identification. Following the testimony of Bell and Davis but prior to the close of the state's case-in-chief, the state filed two motions in limine to admit their statements as substantive evidence.

During Bell's testimony, including during his cross-examination by the defendant, he testified to having suffered the effects of a stroke since June 2, 2007, which had, to some degree, affected his memory. The state sought to admit Bell's written statement to the police for rehabilitative purposes under Connecticut Code of Evidence § 6-11 (b) as a prior consistent statement.[3]

---

years incarceration on the charge of attempt to commit robbery in the first degree to run concurrently with a sentence of ten years incarceration on the charge of robbery in the first degree.

[3] Section 6-11 (b) of the Connecticut Code of Evidence, which covers prior consistent statements, provides: "If the credibility of a witness is impeached by (1) a prior inconsistent statement of the witness, (2) a suggestion of bias, interest or improper motive that was not present at the time the witness made the prior consistent statement, or (3) a suggestion of recent contrivance, evidence of a prior consistent statement made by the witness is admissible, in the discretion of the court, to rebut the impeachment." In addition, the commentary to § 6-11 (b) enumerates a fourth form of impeachment: "a claim of inaccurate memory" under Connecticut case law. In State v. Anonymous (83-FG), 190 Conn. 715, 463 A.2d 533 (1983), the court stated: "If the witness's accuracy of memory is challenged, it seems clear common sense that a consistent statement made shortly after the event and before he had time to forget, should be received in support."

Additionally, the state argued that any inconsistencies in the statement could be considered as substantive evidence under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and § 8-5 (1) of the Connecticut Code of Evidence.[4] The court granted the state's motion, finding that it would be up to the jury to determine Bell's credibility regarding his claim to have suffered a stroke and his inability to recall details.

During Davis' direct examination, he testified that he was currently incarcerated but was not incarcerated at the time of his statement to the police. During cross-examination, he was asked whether the state had promised him anything in exchange for his testimony. The state filed a motion in limine to admit Davis' statement to the police as a prior consistent statement under § 6-11 (b) of the Connecticut Code of Evidence, to rehabilitate Davis and to rebut the inference that he had developed an interest, bias, or motive after he signed his written statement. Additionally, the state argued that parts of the written statement should come in under *Whelan* because some of Davis' statements within the police statement were inconsistent with his trial testimony. Specifically, the state argued that there were two details in the police statement that Davis could not recall on direct examination, including that Davis (1) observed the defendant going through the victim's pockets and (2) heard the defendant say to the victim that he hoped he died. The court granted the state's motion.

(Internal quotation marks omitted.) Id., 729, quoting C. McCormick, Evidence (2d Ed. 1972) § 49, p. 105 n.88; see also *State* v. *Valentine,* 240 Conn. 395, 413, 692 A.2d 727 (1997); *State* v. *Brown,* 187 Conn. 602, 607–608, 447 A.2d 734 (1982).

[4] Section 8-5 (1) of the Connecticut Code of Evidence provides that a prior inconsistent statement is not excluded by the hearsay rule, provided that the declarant is available for cross-examination and "(A) the statement is in writing . . . (B) the writing or recording is duly authenticated as that of the witness, and (C) the witness has personal knowledge of the contents of the statement."

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the [admissibility] of evidence. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Hayes* v. *Decker*, 263 Conn. 677, 683, 822 A.2d 228 (2003).

## A

### Prior Consistent Statements

The defendant first argues that the state impeached Bell and Davis in order to admit under § 6-11 (b) of the Connecticut Code of Evidence the otherwise inadmissible statements that they provided to the police. Specifically, the defendant argues that, on direct examination of Davis, the state, not the defendant, elicited that Davis was presently incarcerated. Additionally, the defendant argues that the defendant never asked Bell any questions about his stroke, which he volunteered during cross-examination and about which the court then questioned him.

In *State* v. *Hines*, 243 Conn. 796, 804–805, 709 A.2d 522 (1998), our Supreme Court stated that "[t]he only relevant inquiry is whether the jury reasonably may have been left with the impression that [the witness'] testimony was a recent fabrication. . . . [I]t is not necessary that the impeachment be explicit, i.e., that an actual allegation of recent fabrication be made, but only that a jury be able to reasonably infer that such is occurring." (Internal quotation marks omitted.) The court held that "[w]hen a trial court reasonably can

conclude that there was sufficient evidence to permit a jury to draw an inference of recent fabrication, it may admit a prior consistent statement for rehabilitative purposes." Id., 806; *State* v. *Arcia*, 111 Conn. App. 374, 385, 958 A.2d 1253 (2008), cert. denied, 290 Conn. 907, 964 A.2d 543 (2009).

Although the defendant is correct that the state first elicited testimony from Davis that he was incarcerated at the time of trial, the defendant, during cross-examination, elicited testimony related to Davis' motivation in testifying. Specifically, the defendant asked Davis whether he would receive or had been promised any sentencing consideration. The court reasonably could conclude from this testimony that there was sufficient evidence for a jury to draw an inference that Davis had recently fabricated his testimony due to his current status as a prisoner. Therefore, the court did not abuse its discretion in admitting Davis' statement to the police as a prior consistent statement for rehabilitative purposes under § 6-11 (b). With regard to Bell's testimony, although the defendant did not specifically question Bell regarding his alleged stroke, the jury still heard that testimony and reasonably could have made an inference that he had an inaccurate memory due to a stroke. Therefore, the court did not abuse its discretion in admitting Bell's statement to the police as a prior consistent statement for rehabilitative purposes under § 6-11 (b).[5]

---

[5] The defendant also raises a claim of improper jury instruction within his evidentiary claim regarding the use of prior consistent statements and requests plain error review. See Practice Book § 60-5. The defendant claims that the court erred by failing to instruct the jury that the prior consistent statements of Bell and Davis were only admissible for purposes of weighing the credibility of the witnesses and that, absent such an instruction, the statements were admitted as substantive evidence.

"A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given." *Pestey* v. *Cushman*, 259 Conn. 345, 372–73, 788 A.2d 496 (2002). Here, there is nothing in the record that shows that the defendant submitted a suggested jury instruction on this specific issue,

B

## Prior Inconsistent Statements

Next, the defendant claims that the court improperly admitted the written statements of Bell and Davis under *Whelan*, thereby violating the defendant's sixth amendment right to confrontation.

We begin our analysis by setting forth the applicable legal principles. "The *Whelan* rule allows the substantive use of a prior inconsistent statement if it is signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." *State* v. *Hart*, 118 Conn. App. 763, 783, 986 A.2d 1058, cert. denied, 295 Conn. 908, 989 A.2d 604 (2010). In addition, we note that "once the proponent of a prior inconsistent statement has established that the statement satisfies the requirements of *Whelan*, that statement, like statements satisfying the requirements of other hearsay exceptions, is

nor that the defendant objected to the instruction as given, and thus, his claim is unpreserved for appeal.

We decline to find that this claim constitutes plain error. "As we often have stated, [p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 69, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

After reviewing the record, we perceive no impropriety that would result in manifest injustice. "It is well established in Connecticut . . . that the trial court generally is not obligated, sua sponte, to give a limiting instruction." (Internal quotation marks omitted.) Id., 70. "The failure by the court to give, sua sponte, an instruction that the defendant did not request, that is not of constitutional dimension and that is not specifically mandated by statute or rule of practice is not so egregious that it affects fundamental fairness or the integrity of and public confidence in the judicial proceedings." *State* v. *Atkins*, 118 Conn. App. 520, 535–36, 984 A.2d 1088 (2009), cert. denied, 295 Conn. 906, 989 A.2d 119 (2010).

presumptively admissible." *State* v. *Mukhtaar*, 253 Conn. 280, 306, 750 A.2d 1059 (2000). A *Whelan* statement should only be excluded if the circumstances from which the statement was made indicate that the statement is "so untrustworthy that its admission into evidence would subvert the fairness of the fact-finding process." Id., 307.

The dispositive issues are (1) whether there were inconsistencies between the statement Davis provided to the police and his testimony at trial and (2) whether the witnesses were available for cross-examination.

First, we examine the defendant's claim that there were not inconsistencies between the statement Davis provided to the police and his testimony at trial. The court granted the state's motion in limine to admit inconsistent parts of the statement of Davis as substantive evidence under *Whelan*. In arguing for the admission of the statement under *Whelan*, the state claimed that there were at least two instances where the statement Davis provided was inconsistent: (1) regarding whether the defendant went through the victim's pockets and (2) whether Davis heard the defendant say to the victim that he hoped the victim died. The defendant claims that one of the purported inconsistencies between Davis' testimony on direct examination and his statement to the police did not exist, and, therefore, the court should not have admitted his statement under *Whelan*. Specifically, the defendant argues that in his testimony during his direct examination *and* in his statement to the police, Davis mentioned that he heard the defendant say to the victim that he hoped the victim died.[6] After examining the record, the defendant is correct that, in regard to that specific statement, Davis'

---

[6] During direct examination of Davis, the following colloquy occurred:

"[The Prosecutor]: . . . Did you hear [the defendant] say anything?"

"[The Witness]: [The defendant] was saying that motherf[——] owe me money, I hope he die, f[—] that mo. That's the only—everything I heard him say."

response is essentially consistent.[7] While this one purported inconsistency does not exist, the other claimed inconsistency between Davis' statement to the police and his testimony on direct examination is indeed inconsistent. When asked on direct examination, Davis could not recall whether the defendant searched the victim's pockets; however, in his statement to the police, he stated that the defendant went through the victim's pockets.

"Whether there are inconsistencies between the two statements is properly a matter for the trial court. . . . Inconsistencies may be shown not only by contradictory statements but also by omissions. In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined. . . . Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement . . . and the same principle governs the case of the

In his written statement to the police, Davis said: "[The defendant] stood at the corner . . . screaming 'f[—] that mother f[——] I hope he die, he should of paid me my money' ".

[7] "[A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . [W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 357–58, 904 A.2d 101 (2006) (en banc).

Here, even though one purported inconsistency in Davis' statement was essentially consistent, there was at least one important difference between Davis' statement to the police and his testimony on direct examination. Furthermore, the jury was charged with determining whether the statements were indeed inconsistent and was not given instructions on the specific purported inconsistencies that the state claims exist. Accordingly, any error by the court in determining inconsistencies in Davis' statement was harmless.

forgetful witness. . . . A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposed assertions have been made. Thus, inconsistencies may be found in changes in position and they may also be found in denial of recollection." (Citations omitted; internal quotation marks omitted.) *State* v. *Whelan*, supra, 200 Conn. 748–49 n.4.

Next, the defendant argues that the witnesses were not available for cross-examination under *Whelan* and that his sixth amendment right to confrontation was violated by admitting Bell's and Davis' statements to the police. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Eaton*, 59 Conn. App. 252, 265, 755 A.2d 973, cert. denied, 254 Conn. 937, 761 A.2d 763 (2000).

We conclude that the court did not abuse its discretion and that the defendant's sixth amendment right of confrontation was not violated. The defendant was not denied all meaningful opportunity for cross-examination. See id., 266–67. Bell was cross-examined extensively by the defendant regarding inconsistencies

between his testimony on direct examination and his written statement to the police, which was marked as an exhibit for identification. The defendant did not cross-examine Davis regarding his statement to the police; however, Davis was questioned about the statement, which was marked as an exhibit for identification during direct examination. Davis was present in court, under oath, and subject to cross-examination. The defendant had the opportunity to cross-examine Davis regarding the statement but, for strategic reasons, did not do so.[8] Here, the court gave the defendant the opportunity for an effective cross-examination of both witnesses regarding their written statements to the police and thus did not violate the defendant's sixth amendment right to confrontation. Accordingly, under the circumstances of this case, we conclude that the court did not abuse its discretion by admitting the prior statements of Bell and Davis under *Whelan*.

II

The defendant next claims that his conviction of both felony murder and robbery in the first degree violates

---

[8] The defendant argues that the right to recall the witnesses was an inadequate remedy in this case because it would have been logistically difficult and would have produced an adverse effect on the jury. The defendant argues that there would have been hardship in tracking down the two witnesses and in serving them a subpoena in the middle of the trial in order to recall them. It is within the court's discretion to allow a recall of a witness for further cross-examination. *State* v. *Martin*, 77 Conn. App. 778, 817, 825 A.2d 835, cert. denied, 266 Conn. 906, 832 A.2d 73 (2003). In several cases before this court, we have found that defendants' arguments that they were denied the right to cross-examine a witness after evidence was introduced subsequent to that witness' testimony is untenable if the defendant does not attempt to recall the witness. See *State* v. *Claudio C.*, 125 Conn. App. 588, 598, 11 A.3d 1086 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011); *State* v. *Davis*, 109 Conn. App. 187, 196, 951 A.2d 31, cert. denied, 289 Conn. 929, 958 A.2d 160 (2008); *State* v. *Stepney*, 94 Conn. App. 72, 79 n.2, 891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006). The record does not reflect that the defendant sought to conduct further cross-examination of either Bell or Davis or that the court in any way restricted the defendant's rights to cross-examine either Bell or Davis. Although it would have been in the court's discretion to deny such a request to recall, no such

the fifth amendment prohibition against double jeopardy.[9] We conclude that the defendant's right to a fair trial was not violated.

We set forth our standard of review and the principles that guide our analysis. "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. . . . The Connecticut constitution provides coextensive protection, with the federal constitution, against double jeopardy. . . . This constitutional guarantee serves three separate functions: [1] It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]. . . . The defendant's claim in [the present case] implicates the last of these three functions.

"The double jeopardy analysis in the context of a single trial is a two part process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 360–61, 796 A.2d 1118 (2002). The traditional

request was made, and thus there is nothing for this court to review on appeal. Accordingly, the defendant's argument must fail.

[9] The defendant failed to raise this claim at trial. He therefore seeks review of his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because the record is adequate for our review, in that it is undisputed that each of the crimes with which the defendant was charged arose out of the same transaction and the defendant's claim implicates his constitutional right against double jeopardy, we consider the merits of his claim.

approach to analyzing whether two offenses constitute
the same offense was set forth in *Blockburger* v. *United
States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).
"[W]here the same act or transaction constitutes a viola-
tion of two distinct statutory provisions, the test to be
applied to determine whether there are two offenses
or only one, is whether each provision requires proof
of a fact which the other does not." Id., 304. "[T]he
*Blockburger* rule is not controlling when the legislative
intent is clear from the face of the statute or the legisla-
tive history. . . . Double jeopardy protection against
cumulative punishments is only designed to ensure that
the sentencing discretion of the courts is confined to
the limits established by the legislature. . . . Where
. . . a legislature specifically authorizes cumulative
punishment under two statutes, regardless of whether
those two statutes proscribe the same conduct under
*Blockburger*, a court's task of statutory construction is
at an end and the prosecutor may seek and the trial
court or jury may impose cumulative punishment under
such statutes in a single trial. . . . The *Blockburger*
test is a rule of statutory construction, and because it
serves as a means of discerning congressional purpose
the rule should not be controlling where, for example,
there is a clear indication of contrary legislative intent."
(Citations omitted; internal quotation marks omitted.)
*State* v. *Greco*, 216 Conn. 282, 292–93, 579 A.2d 84 (1990).

In *Greco*, our Supreme Court held that the defendant's
punishment for felony murder, robbery in the first
degree, and burglary in the first degree did not violate
the double jeopardy clause of the fifth amendment. Id.,
297–98. The defendant argues that the Supreme Court's
decision in *Greco* is distinguishable and, in the alterna-
tive, should be overruled.[10] In *Greco*, as in the present

[10] It is axiomatic that this court, as an intermediate appellate body, is
"bound by Supreme Court precedent and [is] unable to modify it . . . .
[W]e are not at liberty to overrule or discard the decisions of our Supreme
Court but are bound by them. . . . [I]t is not within our province to reevalu-
ate or replace those decisions." (Citation omitted; internal quotation marks

case, the defendant was convicted and punished for felony murder with the underlying predicate crime being robbery in the first degree. The defendant attempts to draw a distinction in that the defendant in *Greco* was charged with first degree robbery under the aggravating factor of being armed with a deadly weapon, as set forth under § 53a-134 (a) (2), whereas the defendant in the present case was charged with robbery in the first degree under § 53a-134 (a) (1) with the aggravating factor of causing serious physical injury. The defendant argues that the legislature intended for the enhanced punishment of § 53a-134 (a) (1) to apply only when the victim is injured, but not killed, during the robbery.

Our Supreme Court recently addressed the precise issue raised by the defendant in *State* v. *Gonzalez*, 302 Conn. 287, 25 A.3d 648 (2011), where the court held that a defendant's conviction of both felony murder and robbery in the first degree with the aggravating factor of serious physical injury under § 53a-134 (a) (1) did not violate double jeopardy. Id., 314–15. In *Gonzalez*, the court explained that "our analysis of the double jeopardy issue in *Greco* did not depend on the exact aggravating factor levied against the defendant." Id., 318. In reaffirming *Greco*, the court held that although the crimes of robbery in the first degree and felony murder with the predicate offense of robbery constitute the same offense under the *Blockburger* test, "the prohibition against double jeopardy was not violated in *Greco* because the legislature clearly intended to permit the state to charge, the jury to convict, and the trial court to sentence, that defendant for the crimes of felony murder with the predicate offenses of robbery and burglary, and the crimes of robbery and burglary in the

omitted.) *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008).

first degree." Id., 319. Under *Greco* and *Gonzalez*, the defendant's claim of a violation of double jeopardy fails.

III

Finally, the defendant claims that the court erred in not permitting him to question Melvin Romeo, a witness for the state, about the substance of the pending charges against Romeo.

Melvin Romeo, who was in a holding cell with the defendant at the Waterbury courthouse during a lunch break, testified that the defendant had admitted to killing the victim. During cross-examination, the state objected when the defendant questioned Romeo about specific acts surrounding pending criminal charges he faced. While the jury was excused, the defendant argued that the specific acts of conduct that Romeo was charged with were probative of Romeo's character for untruthfulness. The court found that questions regarding the specific conduct behind Romeo's pending charges would "come smack up against [the] fifth amendment [right] not to incriminate himself." The attorney representing Romeo in the pending criminal proceedings told the court that Romeo had pleaded not guilty to the charges and that he had instructed Romeo not to incriminate himself during his testimony for the state against the defendant. The court ruled that the defendant could cross-examine Romeo only in regard to what he was actually charged with and not the specific misconduct that resulted in those charges.

"The sixth amendment to the United States constitution guarantees to an accused the right to confront the witnesses against him. . . . The primary interest thus secured is the right to cross-examination . . . an important function of which is exposure of a witness' motivation for testifying. . . . The confrontation right is not absolute and is subject to reasonable limitation.

. . . Under the confrontation clause, there is a minimum of cross-examination that must be accorded to the defendant into matters affecting the reliability and credibility of the state's witnesses. . . . The general rule that restrictions on the scope of cross-examination are within the court's sound discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . We must first determine, therefore, whether the cross-examination permitted was satisfactory under the sixth amendment and, second, whether the court abused its discretion in restricting the scope of the cross-examination." (Citations omitted.) *State* v. *Reed*, 56 Conn. App. 428, 438, 742 A.2d 1285, cert. denied, 252 Conn. 945, 747 A.2d 524 (2000). "We have adhered to this principle and found no error in the limitation of cross-examination into pending criminal charges where we were satisfied, upon review of the entire cross-examination, that the opportunity to impeach the witness sufficiently comported with the constitutional standards embodied in the confrontation clause." (Internal quotation marks omitted.) *State* v. *Ortiz*, 198 Conn. 220, 224, 502 A.2d 400 (1985). To comport with the constitutional standards embodied in the confrontation clause, the defendant, in exercising his right of cross-examination, must be allowed to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

We are satisfied, upon review of the entire cross-examination, that the opportunity to impeach Romeo sufficiently comported with the constitutional standards embodied in the confrontation clause. Romeo was cross-examined about his motives for testifying, especially in connection with the pending forgery and larceny charges against him. The court's ruling, when

examined in the context of the thorough cross-examination of Romeo and his fifth amendment right not to incriminate himself, does not rise to the level of constitutional interference with the defendant's right of confrontation. After determining that the cross-examination satisfies the sixth amendment, we cannot say that the court abused its discretion in limiting cross-examination of Romeo.

The judgment is affirmed.

In this opinion the other judges concurred.