******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HENRY D.*
(AC 37118)

Lavine, Keller and Pellegrino, Js.

*Argued January 5—officially released May 16, 2017*

(Appeal from Superior Court, judicial district of
Fairfield at Bridgeport, Kahn, J.)

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Adam E. Mattei*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Cornelius P. Kelly*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Henry D., appeals from the judgment of conviction, rendered after a jury trial, of one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that (1) the trial court abused its discretion in admitting into evidence the victim's recorded forensic interview as a prior consistent statement, and (2) the prosecutor committed an impropriety when he used a puzzle analogy in his rebuttal closing argument. We affirm the judgment of the trial court.

The following evidence was presented at trial. The defendant lived with the twelve-year-old victim, N.A., and the victim's mother, T.M., in an apartment on the second floor of a three story house. N.A. had an older sister, K.D., who did not live with them, and a brother who lived on the first floor with their grandmother. The defendant slept on the couch while N.A. and T.M. each had a bedroom.

Approximately one or two weeks before August 5, 2008, between 2 a.m. and 3 a.m., N.A. was playing cards in the kitchen with the defendant. After they finished their game, N.A. went into her bedroom to watch television. Shortly thereafter, the defendant went into N.A.'s bedroom and sat at the foot of the bed next to her. He then got on top of her and kissed her lips and breasts and rubbed his fingers between her pants and underwear. He grabbed her arm, took her off the bed, and told her to bend over with her hands on the bed. He took off her shorts and underwear and "tried to put his penis in [her] butt." After he tried to anally penetrate N.A., he pushed her to her knees and "put [her] hand on his penis and he tried to put his penis in [her] mouth." He then grabbed her arms, put her back on the bed, and put his penis in her vagina.

A day or two later, N.A. asked K.D. to visit her. When K.D. arrived, N.A. told her about the defendant's assault, and K.D. relayed this information to T.M. As soon as K.D. told T.M. about the assault, the defendant left the apartment. No one called the police at that time.

John Maloney, a clinical coordinator at a therapeutic treatment center, was the family's therapist, and he often counseled N.A., her siblings, and T.M. together and individually. On September 24, 2008, N.A. told Maloney that a relative had assaulted her. Maloney called T.M. and reported the disclosure to the Department of Children and Families. After receiving this information from Maloney, T.M. contacted the police and took N.A. to a gynecologist to be tested for sexually transmitted diseases and to undergo a physical examination. On October 7, 2008, N.A. participated in a video recorded

forensic interview (interview) with Donna Vitalauno, a social worker. The defendant was arrested in September, 2012.

The defendant was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2). During the trial, the state filed an amended information charging the defendant, in addition to the charge of sexual assault in the first degree, with attempt to commit sexual assault in the first degree. The court granted the state's request to amend the information pursuant to *State* v. *March*, 39 Conn. App. 267, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995).

Over the defendant's objection, the court admitted into evidence as a prior consistent statement the video of the interview for the limited purpose of assisting the jury in evaluating N.A.'s credibility. In addition, during his closing argument, the prosecutor explained to the jury the concept of "beyond a reasonable doubt" by using a puzzle analogy. Defense counsel objected, but the court ruled that the prosecutor's use of the analogy was proper.

The jury found the defendant not guilty of sexual assault in the first degree but guilty of attempt to commit sexual assault in the first degree and risk of injury to a child. The court sentenced the defendant to a total effective sentence of sixteen years imprisonment followed by twenty years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion when it admitted the interview into evidence as a prior consistent statement. We disagree.

The following additional facts are relevant to this claim. On direct examination, N.A. testified that the defendant "tried to put his penis in [her] butt." She testified that she was wearing a black tank top the night of the assault. She also testified that before the assault, the defendant asked her if she was a virgin, and she replied yes. She testified that she did not remember exactly which day of the week the assault happened, but she did remember that it happened on a weekend and that she told K.D. about the assault one or two days after it had happened. She said that on the day that she spoke with K.D., N.A. did not tell T.M. about the assault, but K.D. told T.M. on the same day. N.A. identified a DVD as the video of the interview, but the state did not introduce the video or the transcript of the interview into evidence during its direct examination of N.A.

The defendant's cross-examination of N.A. began with a series of questions relating to discussions she had with T.M. and the prosecutor. Specifically, defense counsel asked N.A. whether she had spoken with them

prior to trial about her testimony or about the case. He elicited testimony that N.A. spoke with T.M. and the prosecutor a few days before the trial started, even though she denied discussing her testimony.[1] Over the course of two days, using the transcript of the interview, the defendant sought to impeach N.A.'s credibility by highlighting apparent inconsistencies between her trial testimony and the statements she had made to Vitalauno during the interview. The defendant attempted to show that the following statements were inconsistent: on which day the assault occurred, what she was wearing the night of the assault, whether she told the defendant that she was a virgin, whether the defendant performed anal intercourse, the number of times the defendant performed anal intercourse, whether she told K.D.'s boyfriend about the assault, and whether she told T.M. about the assault on the same day she told K.D. about it.

At the end of the defendant's cross-examination of N.A., outside the presence of the jury, the state requested that the court admit the video of the interview into evidence as a prior consistent statement. It argued that the interview was admissible because the defendant's questions suggested to the jury that N.A.'s testimony was influenced by the prosecutor and T.M. It also argued that because the defendant questioned N.A. about apparent inconsistencies between her trial testimony and statements she made during the interview, the entire interview was admissible in order to assist the jury in assessing whether her statements were inconsistent. The defendant argued that the interview was hearsay and did not qualify as a prior consistent statement because the defendant attempted to impeach N.A. only on the portions of the interview that were actually inconsistent with her trial testimony. He argued that the state was trying to put the interview in evidence to bolster N.A.'s testimony. The court stated that it would rule on the state's request after it had reviewed the transcript and the video of N.A.'s interview.

After a recess, the court ruled that the interview was hearsay, but it was, nevertheless, admissible because it was being admitted solely "to assist the jury in allowing them to evaluate [N.A.'s] testimony . . . in court and her credibility." It reasoned that the defendant's cross-examination of N.A. left "the jury with the impression that she had given prior inconsistent statements" about, inter alia, "what she told the interviewer in terms of who told her mother, what she told her mother, who told her sister's boyfriend, the clothing she was wearing and other questions challenging her credibility . . . ." The court noted that it was particularly concerned that the defendant's cross-examination left the jury with the impression "that during [the] interview she claimed that the defendant engaged in anal intercourse with her on more than one occasion during this incident and *that is wrong*." (Emphasis added.) In addition, the court stated that the defendant challenged N.A.'s credibility

when he "tried to raise the notion that she met with [the prosecutor] several times, that she met with him with her mother present and that somehow perhaps her story ha[d] changed or been coached."

Before the video was played for the jury, the court instructed the jury that the interview was not being admitted to prove the truth of the matter asserted but that it was only "being admitted to allow [the jury] to evaluate her testimony . . . in court and whether it was consistent or inconsistent with what she said previously during that interview."[2] During the interview, N.A. said that "[h]e stuck his thing in [her butt]" when asked what the defendant did to her body. Later in the interview, she indicated again that the defendant anally penetrated her by pointing to an anatomical picture provided by Vitalauno. She told Vitalauno that she was wearing a red and white shirt the night of the assault and that when the defendant took her clothes off, she told him to stop. When asked when she was assaulted, N.A. stated that she thought that "it was [a] Saturday" because she "looked at the calendar." She also stated that she told both T.M. and K.D.'s boyfriend about the assault.[3]

On appeal, the defendant argues that the court abused its discretion in admitting the video of the interview into evidence because the interview did not qualify as a prior consistent statement, in that "N.A.'s remarks during the forensic interview [were] inconsistent with her impeached trial testimony and do nothing to rehabilitate her credibility." To the extent that the statements were consistent, he argues that the video was not admissible because N.A.'s responses to the defendant's line of questioning about her meetings with the prosecutor "clearly demonstrate [that] N.A. was not coached or subjected to undue influence."[4] He also argues that the portions of the interview that were consistent with N.A.'s trial testimony should not have been admitted because he did not attempt to impeach her on those statements and, thus, admitting the entire interview into evidence only served to bolster N.A.'s credibility. The state argues that the interview was a prior consistent statement because the statements N.A. made during the interview and her trial testimony were "substantially similar" and that any ambiguities are a factual determination for the jury to resolve. It further argues that the interview tended to refute the defendant's suggestion that N.A. was coached by the prosecutor or T.M. Finally, the state contends that the entire interview was properly admitted because "without [N.A.'s] statements in context, the jury would have been left with a distorted view of reality, and the mistaken impression" that she gave inconsistent statements. We agree with the state.

"[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned

only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . This deferential standard is applicable to evidentiary questions involving hearsay, generally . . . and to questions relating to prior consistent statements, specifically." (Internal quotation marks omitted.) *State* v. *Efrain M.*, 95 Conn. App. 590, 596–97, 899 A.2d 50, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

As a threshold matter, we disagree that the interview should not have been admitted because the statements N.A. made during the interview that the defendant used to impeach her testimony did not qualify as prior consistent statements. Many of the defendant's claimed inconsistencies between N.A.'s trial testimony and the statements she made during the interview were either substantially consistent with one another or susceptible to more than one interpretation. The fact that certain statements made during the interview were inconsistent with her trial testimony does not render the entire interview inadmissible as a prior consistent statement. See *State* v. *Velez*, 17 Conn. App. 186, 189, 551 A.2d 421 (1988) ("neither the Supreme Court nor this court has required as a condition of its admissibility that there be *no* inconsistencies between the victim's testimony and that of the constancy of accusation witness[es]" [emphasis added]), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L.Ed. 2d 698 (1989); see also *State* v. *Carolina*, 143 Conn. App. 438, 450, 69 A.3d 341 (prior consistent statement when victim's testimony was "substantially . . . consistent" with statements made during interview), cert. denied, 310 Conn. 904, 75 A.3d 31 (2013). Thus, the interview qualified as a prior consistent statement.

"Although the general rule is that prior consistent statements of a witness are inadmissible, we have recognized exceptions in certain circumstances." *State* v. *Lewis*, 67 Conn. App. 643, 651, 789 A.2d 519, cert. denied, 261 Conn. 938, 808 A.2d 1133 (2002). "Section 6-11 (b) of the Connecticut Code of Evidence sets forth three limited situations in which the prior consistent statement of a witness is admissible: If the credibility of a witness is impeached by (1) a prior inconsistent statement of the witness, (2) a suggestion of bias, interest or improper motive that was not present at the time the witness made the prior consistent statement, or (3) a suggestion of recent contrivance . . . ." (Internal quotation marks omitted.) *Daley* v. *McClintock*, 267 Conn. 399, 403–404, 838 A.2d 972 (2004). Our appellate courts have held that a suggestion that a witness' testimony was unduly influenced or coached by outside

influences is grounds to allow a prior consistent statement into evidence. See id., 412 (witness' deposition testimony admissible to rebut plaintiff's suggestion that witness contrived testimony after talking with defendant's attorney prior to testifying); *State* v. *Vines*, 71 Conn. App. 359, 371, 801 A.2d 918 (prior consistent statement admissible because evidence supported conclusion that witness subjected to undue influences on several occasions before testifying, including threats and offers of money), cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002); *State* v. *Harris*, 48 Conn. App. 717, 731, 711 A.2d 769 (detective's testimony admissible to refute suggestion that victim's testimony was influenced by conversations with police officers or social workers), cert. denied, 245 Conn. 922, 717 A.2d 238 (1998).

The court admitted the interview because the defendant attempted to impeach N.A. with apparent inconsistent statements and he attempted to show that N.A.'s testimony had "changed or been coached" by the prosecutor and T.M. We conclude that the court did not abuse its discretion in admitting the interview into evidence because the defendant attempted to impeach N.A. with the suggestion that N.A.'s testimony was the product of undue influence.[5]

"A claim of undue influence will involve a situation in which the statement's opponent offers evidence that, prior to trial, the witness' testimony may have been affected by other persons." *State* v. *Vines*, supra, 71 Conn. App. 369 n.6. "When a party is attempting to use a prior consistent statement to counter a claim of undue influence, the analysis is similar to that for cases involving a witness with a motive, bias or interest in the case." Id., 370. "[T]he only relevant inquiry is whether the jury reasonably may have been left with the impression that [the witness'] testimony was a recent fabrication. . . . [I]t is not necessary that the impeachment be explicit, i.e., that an actual allegation of recent fabrication be made, but only that a jury be able to reasonably infer that such is occurring. . . . [W]hen a trial court reasonably can conclude that there was sufficient evidence to permit a jury to draw an inference of recent fabrication, it may admit a prior consistent statement for rehabilitative purposes." (Internal quotation marks omitted.) *State* v. *Rose*, 132 Conn. App. 563, 570–71, 33 A.3d 765 (2011), cert. denied, 303 Conn. 934, 36 A.3d 692 (2012).

In the present case, the court did not abuse its discretion in admitting the interview on the ground that the jury may have been left with the impression that the prosecutor or T.M. coached or influenced N.A.'s testimony. On multiple occasions, the defendant specifically questioned N.A. about whether she had ever discussed her testimony with T.M. He asked her whether she had spoken with the prosecutor about why she was going

to court and whether they had talked about the case. He elicited testimony that she observed T.M. and the prosecutor speaking in the prosecutor's office prior to trial. He also elicited testimony that N.A. spoke with the prosecutor and T.M. shortly before she testified.

It is not determinative that N.A. denied speaking with the prosecutor and T.M. about her testimony. For the video to be admitted, it was only necessary that the defendant left the jury with the impression that N.A.'s testimony was unduly influenced or coached by the prosecutor or T.M. We conclude that the defendant's cross-examination could have left the jury with this impression. See *State* v. *Hines*, 243 Conn 796, 806, 709 A.2d 522 (1998) (prior consistent statement admissible because defendant's cross-examination of witness directed specifically at proving witness lied).

Finally, we disagree with the defendant's argument that N.A.'s statements that were consistent with N.A.'s trial testimony should have been excluded because he had not sought to impeach her with those statements. "When a party has impeached a witness with portions of a statement that are inconsistent with his or her trial testimony, *the trial court may, in its sound discretion, admit the entire statement for rehabilitative purposes, in order to place the allegedly inconsistent statement into context and to prevent the jury from being misled.*" (Emphasis added.) *State* v. *Hines*, supra, 243 Conn. 807–808; see also *State* v. *Efrain M.*, supra, 95 Conn. App. 599-600; but see *State* v. *Moody*, 77 Conn. App. 197, 207–208, 822 A.2d 990, cert. denied, 264 Conn. 918, 827 A.2d 707, cert. denied, 540 U.S. 1058, 124 S. Ct. 831, 157 L.Ed. 2d 714 (2003). In the present case, while the defendant did not offer the transcript into evidence, he relied on portions of it when he sought to impeach N.A.'s testimony. In essence, the defendant, after strategically emphasizing only certain portions of N.A.'s interview on cross-examination, wants to preclude the state from putting those alleged inconsistencies into context. See *State* v. *Apostle*, 8 Conn. App. 216, 245, 512 A.2d 947 (1986), superseded by statute on other grounds as stated in *State* v. *Kulmac*, 230 Conn. 43, 58 n.12, 644 A.2d 887 (1994). The court did not abuse its discretion in admitting the entire interview in order to put N.A.'s apparent inconsistent statements into context and to avoid misleading the jury.

We conclude, therefore, that the video of the interview was properly admitted into evidence for the limited purpose of assisting the jury in assessing N.A.'s credibility.

II

The defendant's second claim is that the prosecutor engaged in an act of prosecutorial impropriety during his rebuttal closing argument. We disagree.

The following additional facts are relevant to this

claim. During his rebuttal argument, the prosecutor made the following statements: "And as I eluded to earlier, listen to the court's instruction . . . that we . . . don't have to prove [the state's burden] beyond all . . . to a mathematical certainty or remove every single doubt from your mind. . . . And as I stated before and I can't state it enough, we have to prove the elements beyond a reasonable doubt and [defense counsel] threw a lot of things on this table right here, a lot of facts out here, some favorable for the state, some favorable for the defense. *Almost like a jigsaw puzzle putting it together. You bring this piece over here, you bring this piece over here, bring this piece over here and you don't need every single piece to put that jigsaw puzzle together. For argument sake, if it was a jigsaw puzzle of an elephant, if it came in and you had a piece of the trunk and you had a piece of the grey body, the . . . leg as well and there's still six or seven empty pieces over here, you don't need the whole puzzle to determine hey, that's a puzzle and the picture . . . in the puzzle is an elephant.* Again, that's in keeping with the burden that the state has." (Emphasis added.) After closing arguments, outside the presence of the jury, the defendant argued that the use of the jigsaw puzzle analogy was improper, but the court disagreed and did not give a curative instruction.

On appeal, the defendant argues that the prosecutor committed an impropriety when he used the puzzle analogy in explaining the concept of "beyond a reasonable doubt." He argues that the analogy "diluted the state's burden of proof, creating a significant risk that the jury would convict the defendant on a standard less than reasonable doubt." He contends that the prosecutor's language of " 'six or seven empty pieces' suggested some level of mathematical certainty was required to convict the defendant" and that the "average American juror would recognize a jigsaw puzzle of an elephant long before all of the pieces are in place." He also argues that the puzzle analogy "suggested that the jurors could convict the defendant in the absence of evidence proving the essential elements of the crimes charged." The state replies that the prosecutor's use of the puzzle analogy was not improper because it was used in direct response to defense counsel's closing argument.[6] It also argues that the "comment did not suggest any specific quantitative measure of reasonable doubt," and that, instead, the puzzle analogy was used to "remind the jury that it was not required to prove something to a mathematical certainty or beyond all doubt." (Internal quotation marks omitted.) We conclude the state's argument is more convincing.

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [the impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due pro-

cess right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . .

"As we previously have recognized, prosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however] [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 428–29, 902 A.2d 636 (2006).

"It is well established that [t]he state [has] to prove every element of the crimes charged beyond a reasonable doubt, not every detail of the state's theory of the case. Although some evidence may be inconsistent with the state's theory of the case, the jury is not bound to credit only that evidence to the exclusion of evidence consistent with the state's theory. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Gordon*, 104 Conn. App. 69, 77, 931 A.2d 939, cert. denied, 284 Conn. 937, 937 A.2d 695 (2007).

We conclude that the prosecutor's use of the puzzle analogy in this particular case was not improper. The analogy did not imply that some level of mathematical certainty was required to convict the defendant. The prosecutor never stated that a certain number or configuration of pieces of the puzzle were required or that a certain percentage of the puzzle needed to be completed in order to find the defendant guilty. Cf. *State* v. *Lindsay*, 180 Wn. 2d 423, 436, 326 P.3d 125 (2014) (puzzle

analogy improper because comment included references to numbers and percentages); *State* v. *Fuller*, 169 Wn. App. 797, 827-28, 282 P.3d 126 (2012) (puzzle analogy proper in part because prosecutor did not quantify level of certainty necessary to satisfy beyond a reasonable doubt standard); *Lord* v. *State*, 107 Nev. 28, 35, 806 P.2d 548 (1991) (puzzle analogy improper because prosecutor suggested having "90 to 95 [percent]" of pieces enough to convict beyond a reasonable doubt).

On the contrary, we agree with the court that the prosecutor was "addressing the argument that . . . the state *isn't* required to prove something to a mathematical certainty or beyond all doubt . . . ." (Emphasis added.) Using the analogy, the prosecutor told the jury that it could conclude that the puzzle was a picture of an elephant when only a majority of the pieces were in place. This is representative of the accurate statement of law that the state was not required to prove its case beyond *all* doubt. See *State* v. *Gordon*, supra, 104 Conn. App. 78 (statement that prosecutor did not have "to prove the case beyond a reasonable doubt" proper because prosecutor referring to accurate statement of law that state does not need to prove every fact supporting case but only responsible for proving elements). Moreover, immediately before using the puzzle analogy, the prosecutor reminded the jury to remember the court's instruction that "beyond a reasonable doubt" does not mean that the state has to "prove [its case] . . . to a mathematical certainty or remove every single doubt from your mind." He also reiterated this point in his closing argument before his rebuttal argument.

The prosecutor also did not attempt to dilute the burden of proof or shift the burden of proof to the defendant. He prefaced the puzzle analogy six times, and once after the analogy, with a reminder to the jury that the state bears the burden of proving each element beyond a reasonable doubt. See *State* v. *Gilberto L.*, 292 Conn. 226, 256, 972 A.2d 205 (2009) (exclusion of phrase "beyond a reasonable doubt" not improper because prosecutor reminded jury at least six times during closing argument that state must prove elements of crimes beyond a reasonable doubt); *State* v. *H.P.T.*, 100 Conn. App. 183, 187–88, 917 A.2d 586 (prosecutor's remark did not shift burden of proof to defendant because comment isolated, and prosecutor opined that state bears burden of proof of beyond a reasonable doubt), cert. denied, 282 Conn. 917, 925 A.2d 1100 (2007). He also told the jury that it must listen to the court's instructions when it explained each of the elements and the definition of "beyond a reasonable doubt." See *State* v. *Ciullo*, 314 Conn. 28, 39, 100 A.3d 779 (2014) (comment did not shift burden of proof to defendant in part because prosecutor told jury to listen to judge's instructions); *State* v. *Fuller*, supra, 169 Wn.

App. 827–28 (puzzle analogy proper in part because prosecutor stated that it had to prove every element beyond a reasonable doubt and referenced court's actual instructions).

We emphasize that each case must be examined on a case-by-case basis, and puzzle analogies should, in general, be used with great caution, as the risk for impropriety is significant. We conclude, however, that in this case, under the circumstances, resort to the puzzle analogy was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the victim's name or to identify members of the victim's family through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] Defense counsel cross-examined N.A. as follows:

"Q. And you never discussed coming to court here and testifying with your mother . . . ?

"A. Yes.

"Q. Now, you've been to court before to speak to [the prosecutor], correct?

"A. Yes.

"Q. And when was that?

"A. Yesterday.

"Q. Any other days?

"A. Every other day . . . before that. . . .

"Q. Did your mom come with you?

"A. No.

"Q. Did you ever come to court here to talk to [the prosecutor] . . . with your mom?

"A. Once.

"Q. And when was that?

"A. It was last Monday.

"Q. And when you spoke—did you and your mom speak at all as to on— why you were coming down to court?

"A. No . . . .

"Q. You came here with your mom, a Monday, would that be one week ago, two weeks ago?

"A. A week ago.

"Q. A week ago? And you didn't talk about your testimony at all or the case?

"A. No.

"Q. And when you spoke to [the prosecutor], was your mom there?

"A. No.

"Q. Any time you spoke to [the prosecutor], did you go back and talk to your mom about what happened?

"A. No.

"Q. Did you ever see [the prosecutor] [talking] to your mom?

"A. Yes.

"Q. And were [you] able to hear what they were saying?

"A. No."

[2] The court allowed the state to provide a copy of the transcript of the interview to the jury so that it could read it while the video was playing, although it did not admit the transcript into evidence.

[3] The defendant acknowledged at oral argument before this court that, apart from the statements the defendant attempted to impeach her with, the vast majority of the interview was consistent with N.A.'s trial testimony.

[4] The defendant attempts to support his argument that N.A. was not coached by the prosecutor or T.M. by noting that at the end of the first day of trial, after the state finished its direct examination but before the defendant finished his cross-examination of N.A., the court "disagreed with the state's attorney['s] claim that defense counsel's questions during cross-examination suggested that N.A.'s trial testimony was somehow affected by the conversations she had with the state's attorney." After a review of the record, we conclude that the court did not rule on the issue at that time, but reserved its decision until after it reviewed the video and a transcript of the interview, and after the defendant completed his cross-examination of N.A. Thus, we

find this argument unavailing.

[5] Alternatively, we conclude that the court did not abuse its discretion in admitting the video into evidence in order to refute the notion that N.A. had given inconsistent statements. After reviewing the transcript of the interview and N.A.'s trial testimony, we conclude the court did not abuse its discretion in finding that the defendant's cross-examination left the jury with the impression that N.A.'s interview was inconsistent with her trial testimony. See *State* v. *Abrahante*, 56 Conn. App. 65, 72, 741 A.2d 976 (1999) (admitting prior consistent statement to show "the [inconsistencies] in context and to prevent the jury from being misled" [internal quotation marks omitted]); *State* v. *Apostle*, 8 Conn. App. 216, 245, 512 A.2d 947 (1986), superseded by statute on other grounds as stated in *State* v. *Kulmac*, 230 Conn. 43, 58 n.12, 644 A.2d 887 (1994) (allowing state to ask victim questions pertaining to same prior statement offered by defendant).

Specifically, we agree with the court that the defendant's line of questioning left the jury "with the impression that during this interview [N.A.] claimed that the defendant engaged in anal intercourse with her on more than one occasion during this incident . . . ." Contrary to the defendant's argument, our review of the record discloses that N.A. did not state in the interview that there was more than one instance of penetration. In context, she described only one instance of penetration, which was substantially consistent with her trial testimony that the defendant "tried" to engage in anal intercourse with her on one occasion.

[6] We disagree with the state's argument that defense counsel invited the claimed impropriety during his closing argument. It contends that the defense counsel told the jury to clinically evaluate the evidence when he stated "[the prosecutor is] relying on you to evaluate what you've heard here, to *take it apart, put it together, take it apart, put it together.*" (Emphasis added.). Thus, it argues that "the puzzle theme was not introduced by the state, but, rather, it was first introduced by the defendant during his closing," so it was free to remind the jury that its burden was not to prove its case to a mathematical certainty. We fail to see how defense counsel's closing argument invited such an argument, as the comment was not directly referencing a puzzle analogy or the burden the state must meet to prove its case. We conclude, nevertheless, that the state's use of the puzzle analogy was not improper.

_____