NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

KAIL JAY VANDERPOOL,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-14180
Trial Court No. 3CO-18-00010 CR

O P I N I O N

As Amended
No. 2822 — December 15, 2025

Appeal from the Superior Court, Third Judicial District, Cordova, Rachel Ahrens, Judge.

Appearances: Claire F. De Witte (opening brief) and Renee McFarland (reply brief), Assistant Public Defenders, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Following a jury trial, Kail Jay Vanderpool was convicted of felony driving under the influence and felony refusal to submit to a chemical test.[1] Vanderpool was also convicted of three misdemeanors: leaving the scene of an accident (involving damage to a vehicle only), reckless endangerment, and driving with a revoked license.[2]

On appeal, Vanderpool argues that the superior court erroneously failed to obtain his personal jury trial waiver on the prior convictions element that elevated the misdemeanor crimes of driving under the influence and refusal to submit to a chemical test to felony convictions. The State concedes that the superior court erred in failing to obtain a personal jury trial waiver and that the felony convictions must therefore be vacated and replaced by misdemeanor convictions. We agree that the concession is well-founded, and we accordingly vacate the felony convictions and remand for further proceedings.

Vanderpool also argues that the prosecutor committed prosecutorial misconduct when she (1) analogized reasonable doubt to a 500-piece puzzle of a tiger with ten pieces missing and (2) argued in rebuttal that Vanderpool's attorney had conceded one offense because the attorney was trying to distract the jury's attention from the fact that Vanderpool was guilty of all the offenses. For the reasons explained here, we do not find reversible error.

*Relevant facts*

On April 7, 2018, Dennis Cronk called 911 to report that a man on a motorcycle going about 80 to 100 miles an hour struck the side of his truck. Cronk said that the driver would probably be injured and that he did not know how the driver "lived

---

[1]   AS 28.35.030(n) and AS 28.35.032(p).

[2]   AS 28.35.050(b), AS 11.41.250, and AS 28.15.291(a)(1), respectively.

through" the crash. A twelve-year-old boy also witnessed the motorcycle "going real fast," hitting the truck, and narrowly missing the boy.

Cordova Police Officer Cameron Hayden responded to the call. After talking to Cronk, Officer Hayden located a man with a damaged motorcycle, William Srb, two streets away. Srb had just finished returning his neighbor, Kail Vanderpool, to Vanderpool's apartment. Srb said that he had been tinkering with his motorcycle and Vanderpool had helped him. Srb let Vanderpool ride the motorcycle and Vanderpool crashed it. Srb later testified at trial that Vanderpool had not appeared drunk, but Srb was not paying attention and "would not have noticed anything."

Officer Hayden went to Vanderpool's apartment, where he was let in by Vanderpool's girlfriend, Holly Glasen. Vanderpool was seated in a chair with his left ankle injured. He appeared to have been crying and to be "in immense pain." Officer Hayden noticed that Vanderpool had bloodshot, watery eyes and an odor of alcohol.

Vanderpool told Officer Hayden that he had drank "a bunch of alcohol" after the accident to try to kill the pain, but it was not working. Officer Hayden later looked around the room and in a nearby trash can, but he did not see any alcohol containers. Glasen, who had arrived home after Vanderpool was brought home, told Officer Hayden that she had seen Vanderpool drink a couple of beers earlier that day but she had not seen him drink any alcohol since the accident.

Vanderpool admitted that he drove the motorcycle without a license. However, he blamed the accident on Cronk, whom he said "came over the line" and "tagged [his] foot." Vanderpool said that he was driving at an ordinary speed.

Vanderpool was transported to the hospital so that he could be treated for his injury. Vanderpool received a shot and a bottle of pills. Vanderpool said he felt "loopy," and he refused to perform field sobriety tests. After his injury was treated, Vanderpool was arrested and transported to the police station to take a breath test.

Vanderpool refused to give a breath sample and repeatedly told Officer Hayden that he drank after the accident. Vanderpool interrupted multiple times when

Officer Hayden was reading the implied consent advisement and the notice of his right to an independent chemical test. Vanderpool said he was "lost" and he wanted to speak to an attorney. Officer Hayden provided him with a phone and a phone book. Officer Hayden later gave Vanderpool another opportunity to provide a breath sample, which Vanderpool refused.

A grand jury later indicted Vanderpool for felony driving under the influence (DUI) and felony refusal to submit to a chemical test.[3] The State also charged Vanderpool with the following misdemeanor offenses: leaving the scene of an accident, reckless endangerment, and driving while license revoked.[4]

Vanderpool filed a motion to bifurcate his trial and preclude evidence of his prior DUI convictions in the first part of trial. The superior court granted the motion over the State's objection.

At trial, Officer Hayden testified that Vanderpool's poor driving was consistent with impairment. He also testified that Vanderpool seemed to understand the implied consent advisement and the right to an independent test and that Vanderpool was trying to strategically delay any testing.

Vanderpool did not testify, although his statements about drinking after the accident and being confused during the DUI processing were admitted.

The jury convicted Vanderpool of driving under the influence, refusal to submit to a chemical test, leaving the scene of an accident, reckless endangerment, and driving while license revoked.

The next step should have been to hold the bifurcated portion of the trial on Vanderpool's prior convictions, which the State intended to rely on to elevate the jury's verdicts for driving under the influence and refusal to submit to a chemical test

---

[3]   AS 28.35.030(n) and AS 28.35.032(p).

[4]   AS 28.35.050(b), AS 11.41.250, and AS 28.15.291(a)(1), respectively.

to felonies. Vanderpool's attorney agreed to stipulate to the prior convictions after the jury returned guilty verdicts. But instead of conducting the second part of the bifurcated trial and obtaining Vanderpool's personal waiver of his right to a jury trial on the prior convictions element of the felony driving under the influence and refusal counts and conducting the second part of the bifurcated trial on Vanderpool's stipulation, the superior court simply entered felony convictions on those counts.

This appeal followed.

*The State concedes that the superior court committed structural error when it failed to obtain Vanderpool's jury trial waiver*

A criminal defendant has a state and federal constitutional right to a jury trial on all elements of a charged offense.[5] A defendant can waive their right to a jury trial on an element of an offense, but that waiver must be a personal one by the defendant.[6] A defense attorney cannot waive their client's jury trial right.[7] Failure to obtain a valid jury trial waiver is structural error.[8]

Under Alaska law, a defendant's prior convictions are an element of the offenses of felony driving under the influence and refusal to submit to a chemical test and must be found by a jury beyond a reasonable doubt unless the defendant has personally waived their right to a jury trial on that element.[9] A stipulation to the prior

---

[5]  *Hutton v. State*, 350 P.3d 793, 798 (Alaska 2015); *see also Hedrick v. State*, 474 P.3d 4, 7 & n.4 (Alaska App. 2020) (citing U.S. Const. amends. VI, XIV; Alaska Const. art. I, § 11).

[6]  *Walker v. State*, 578 P.2d 1388, 1389-90 (Alaska 1978).

[7]  *Id.*

[8]  *Id.*

[9]  *Ross v. State*, 950 P.2d 587, 590-91 (Alaska App. 1997). A defendant is guilty of felony driving under the influence if the defendant commits the offense of driving under the influence *and*, as relevant here, the defendant has two prior convictions for driving

convictions does not automatically waive the defendant's right to a jury trial on those elements.[10]

Here, Vanderpool's attorney agreed to stipulate that Vanderpool had two or more prior convictions for driving under the influence or refusal. But the court did not personally address Vanderpool to obtain his jury trial waiver on that element. Instead, the court simply accepted the attorney's stipulation and sentenced Vanderpool for felony driving under the influence and refusal to submit to a chemical test without any formal finding that the State had proved the prior convictions elements.

The State concedes that, without a personal jury trial waiver on the prior convictions element, it was error for the court to convict Vanderpool of felony driving under the influence and felony refusal. The State asserts, however, that Vanderpool remains validly convicted of misdemeanor driving under the influence and misdemeanor refusal because the elements of those misdemeanors were found by the jury. Vanderpool agrees that the court's error in failing to obtain a jury trial waiver does not affect his convictions for misdemeanor driving under the influence and refusal.

Because we agree that the State's concession is well-founded,[11] we vacate Vanderpool's felony convictions for driving under the influence and refusal and remand this case to the superior court. On remand, the State may elect whether to retry Vanderpool for the felony driving under the influence and refusal charges. If the State

_____

under the influence or refusal to submit to a breath test within the preceding ten years. AS 28.35.030(n); AS 28.35.032(p).

[10] *Hank v. State*, 551 P.3d 599, 602-03, 608 (Alaska App. 2024) (explaining that personal waiver is not necessary where the jury remains the factfinder); *Ross*, 950 P.2d at 591 (noting that a stipulation is presented to the jury and the jury must make a finding of fact on the prior convictions element).

[11] *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (explaining that the public interest requires an independent appellate court review of criminal proceedings when the State concedes error).

elects not to retry Vanderpool, the court shall enter misdemeanor convictions and resentence Vanderpool on those convictions.[12]

*Vanderpool's claims of error regarding the prosecutor's closing argument*

Vanderpool also challenges two aspects of the prosecutor's closing argument, asserting that they constituted prosecutorial misconduct that improperly diminished the State's burden of proof and denigrated the defense role.

The first aspect of the prosecutor's closing argument that Vanderpool challenges is the prosecutor's use of a puzzle analogy to describe reasonable doubt. The prosecutor stated:

> So one of the examples that I usually use when it comes to [the "beyond a reasonable doubt" standard] is a puzzle. And anyone who has ever done a puzzle — let's say you're doing a 500-piece puzzle and it's a tiger, is what the final picture is going to show. And you put them together, the puzzle, and you get down to the last 10 pieces and you haven't finished it yet. I mean, you can look at that puzzle and know it's a tiger. You don't need those last 10 pieces to know what you're looking at is a tiger.
>
> And so that's kind of what I like to use for beyond a reasonable doubt, right, because it's not all doubt. You don't have to have every piece of the puzzle answered in order to find someone guilty. It's a reasonable doubt. And so the question is, when you look at the puzzle, do you know the answer to it?
>
> And the things that are in my puzzle are the elements of the crimes. So it's nothing outside of that. And I don't have to prove all of them beyond all doubt. It's beyond a reasonable

---

[12] The parties dispute whether a retrial would involve all of the elements of the felony driving under the influence and refusal charges or only the prior convictions elements that make those charges felonies. The parties may litigate this question on remand.

doubt. And here, we've done that, and I'm asking you to find the defendant guilty of all the counts.

Vanderpool's attorney did not object to this puzzle analogy. However, in her closing argument, she was critical of the analogy:

> Being on a jury is incredibly important. And this is not a tiger puzzle. We are here in a criminal case. This is the highest legal burden in the land. This is someone's life. And the burden is on the government here. We're not playing a game.

Later in her closing argument, defense counsel likewise stated that proof beyond a reasonable doubt "is not a puzzle" or "a cute little box that we fit a few things into."

On appeal, Vanderpool argues that the prosecutor's use of a puzzle analogy to describe the "beyond a reasonable doubt" standard was reversible error because it improperly diminished the State's burden of proof. He points to various cases from other jurisdictions that have been critical of such puzzle analogies, particularly when they appear to be quantifying reasonable doubt in terms of percentages.[13]

Vanderpool acknowledges that his attorney did not object to the puzzle analogy and that he must therefore show plain error on appeal. Plain error is error that "(1) was not the result of intelligent waiver or a tactical decision not to object; (2) was obvious; (3) affected substantial rights; and (4) was prejudicial."[14] We do not find plain error here.

---

[13] *See, e.g.*, *State v. Lindsay*, 326 P.3d 125, 131-32 (Wash. 2014); *Lord v. State*, 806 P.2d 548, 552 (Nev. 1991); *State v. Crawford*, 262 P.3d 1070, 1081-82 (Kan. App. 2011), *aff'd*, 334 P.3d 311 (Kan. 2014) ("References to jigsaw puzzles and missing pieces venture into particularly dangerous territory, as the case authority from other jurisdictions suggests. Such arguments often impermissibly suggest a mathematical formula for reasonable doubt or otherwise tend to dilute the standard or confuse jurors in ways that could result in reversible error in many circumstances."); *State v. Johnson*, 243 P.3d 936, 939-40 (Wash. App. 2010).

[14] *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

As an initial matter, we note that the defense attorney's failure to object may have been tactical. Rather than objecting and obtaining a curative instruction from the court, it appears that the defense attorney strategically chose to directly address the puzzle analogy in her closing argument, criticizing the analogy as inapt and overly reductive. Thus, we could potentially conclude, on this ground alone, that Vanderpool's plain error claim fails.[15] We nevertheless address the propriety of the prosecutor's puzzle analogy because this appears to be an issue of first impression for the Alaska courts.

Vanderpool is correct that courts in other jurisdictions have been critical of prosecutors analogizing the "beyond a reasonable doubt" standard to a puzzle. In *State v. Lindsay*, for example, the Washington Supreme Court reversed a conviction in part because the prosecutor improperly analogized the "beyond a reasonable doubt" standard to a puzzle depicting the Seattle skyline with the easily recognizable Seattle Space Needle.[16] The prosecutor in *Lindsay* argued to the jury that "you can be halfway done with that puzzle and you know beyond a reasonable doubt that it's Seattle" and "[y]ou could have 50 percent of those puzzle pieces missing and you know it's Seattle."[17]

The Washington Supreme Court held that the prosecutor's analogy constituted prosecutorial misconduct because it misstated the State's burden of proof and improperly quantified the degree of certainty the jurors needed to act.[18] Other courts

---

[15]  *See id.*; *see also Moreno v. State*, 341 P.3d 1134, 1146 (Alaska 2015) ("Whether the defendant made a tactical decision not to object or intelligently waived an opportunity to object must be plainly obvious from the face of the record, not presumed in the face of a silent or ambiguous record.").

[16]  *State v. Lindsay*, 326 P.3d 125, 131-36 (Wash. 2014).

[17]  *Id.* at 131.

[18]  *Id.* at 131-32.

have likewise criticized similar puzzle analogies as improperly quantifying the burden of proof, trivializing the State's burden, and encouraging juries to "jump to a conclusion" by using iconic images.[19]

But not every puzzle analogy is improper. Some courts have rejected challenges to puzzle analogies in circumstances where the analogy is limited to arguing that the jury does not need to see every piece of a puzzle in order to know what the puzzle depicts.[20] In those circumstances, courts have generally accepted the analogy as

---

[19] *See Lord v. State*, 806 P.2d 548, 552 (Nev. 1991) (explaining that puzzle analogy improperly quantified burden of proof because the prosecutor suggested having "90-95 [percent]" of pieces was enough to convict beyond a reasonable doubt); *State v. Johnson*, 243 P.3d 936, 940 (Wash. App. 2010) (holding that the prosecutor's arguments discussing the reasonable doubt standard in the context of a partially completed puzzle "trivialized the State's burden, focused on the degree of certainty the jurors needed to act, and implied that the jury had a duty to convict without a reason not to do so"); *People v. Centeno*, 338 P.3d 938, 947 (Cal. 2014) (encouraging jury to "jump to a conclusion" with misleading comparison to a puzzle with iconic imagery); *see also, e.g.*, *People v. Van Meter*, 421 P.3d 1222, 1229-30 (Colo. App. 2018) (stating that "puzzle analogies can be problematic if they (1) 'quantify the concept of reasonable doubt'; (2) 'inappropriately trivialize the state's burden'; (3) 'equate the burden of proof to an everyday choice'; or (4) 'use iconic images, which invite the jury to jump to a conclusion about a defendant's guilt'" (quoting *People v. Camarigg*, 488 P.3d 267, 277 (Colo. App. 2017))); *People v. Katzenberger*, 101 Cal. Rptr. 3d 122, 127 (Cal. App. 2009) (criticizing puzzle analogy for giving "the distinct impression that the reasonable doubt standard may be met by a few pieces of evidence" and "invit[ing] the jury to guess or jump to a conclusion, a process completely at odds with the jury's serious task of assessing whether the prosecution has submitted proof beyond a reasonable doubt"); *People v. Wilds*, 529 N.Y.S.2d 325, 327 (N.Y. App. Div. 1988) (deciding puzzle analogy diminished burden of proof); *State v. Crawford*, 262 P.3d 1070, 1081-82 (Kan. App. 2011), *aff'd*, 334 P.3d 311 (Kan. 2014).

[20] *E.g.*, *State v. Curtiss*, 250 P.3d 496, 509-10 (Wash. App. 2011) (concluding that puzzle analogy was not improper because it did not purport to quantify the level of certainty required to satisfy the "beyond a reasonable doubt" standard nor did it minimize or shift the burden of proof to the defendant).

a fair illustration of the legal principle that the State need not prove the defendant's guilt beyond *all* doubt.[21]

In *State v. Henry D.*, for example, the prosecutor argued that "you don't need the whole puzzle to determine . . . [that the picture on the puzzle] is an elephant" and that it was possible to know that the puzzle depicted an elephant even if "there's still six or seven empty pieces."[22] The Connecticut Supreme Court concluded that this puzzle analogy was not improper because "[t]he analogy did not imply that some level of mathematical certainty was required to convict the defendant" as "[t]he prosecutor never stated that a certain number or configuration of pieces of the puzzle were required or that a certain percentage of the puzzle needed to be completed in order to find the defendant guilty."[23] The court emphasized, however, that "each case must be examined on a case-by-case basis" and that "puzzle analogies should, in general, be used with great caution, as the risk for impropriety is significant."[24]

The puzzle analogy in Vanderpool's case falls in between the analogies that courts have accepted as proper and the analogies that courts have held improper. It is clear from context that the primary purpose of the analogy was to illustrate the legitimate point that proof beyond a reasonable doubt does not necessarily mean that the State has to answer every question and fill in every "missing piece." But the

---

[21] *E.g.*, *id.*; *State v. Henry D.*, 163 A.3d 642, 651-52 (Conn. App. 2017); *State v. Fuller*, 282 P.3d 126, 141-42 (Wash. App. 2012) (holding puzzle analogy proper because, among other reasons, the prosecutor did not quantify the level of certainty necessary to satisfy "beyond a reasonable doubt" standard); *State v. Maurice B.*, 324 A.3d 850, 860-61 (Conn. App. 2024).

[22] *Henry D.*, 163 A.3d at 651.

[23] *Id.* at 652.

[24] *Id.* at 653; *see also Crawford*, 262 P.3d at 1081-82 ("Counsel in criminal cases would do well to avoid comments mixing reasonable doubt and jigsaw puzzles in speaking with the jury.").

specification of a 500-piece puzzle of a tiger with ten pieces missing resembles the type of quantification that courts have condemned.[25]

In any event, even when courts have found a puzzle analogy improper, they have often found the impropriety harmless if the jury is otherwise properly instructed on the "beyond a reasonable doubt" standard and the prosecutor or court is otherwise careful to acknowledge the extraordinarily high burden of proof that the State faces.[26]

Here, we find any impropriety harmless. The jury was properly instructed on the "beyond a reasonable doubt" standard, and the puzzle analogy was only a brief reference in a closing argument that did not otherwise misstate the State's burden of proof. Moreover, any potential prejudice from the puzzle analogy was lessened by the defense attorney's direct attack on the analogy in her closing argument. Given these circumstances, we reject Vanderpool's claim that the superior court committed plain error when it failed to *sua sponte* intervene in response to the prosecutor's puzzle analogy.

Vanderpool makes a second challenge to the prosecutor's rebuttal argument. In the defense closing argument, the defense attorney conceded that Vanderpool was guilty of driving with a revoked license. The defense attorney also emphasized that Vanderpool had been "up front" with the officer at the hospital about the fact that he was guilty of driving with a revoked license. The clear implication of

---

[25]  *See supra* note 12 and accompanying text.

[26]  *See, e.g.*, *Lord v. State*, 806 P.2d 548, 552 (Nev. 1991); *People v. Van Meter*, 421 P.3d 1222, 1230 (Colo. App. 2018); *People v. Katzenberger*, 101 Cal. Rptr. 3d 122, 127-29 (Cal. App. 2009) (criticizing puzzle analogy but concluding that misconduct was not prejudicial because the jury was properly instructed and the evidence against the defendant was strong); *State v. Hayes*, 855 N.W.2d 668, 677 & n.6 (S.D. 2014) (deciding that a prosecutor's quantitative analogy of reasonable doubt to a bear puzzle missing ten pieces was not shown to affect substantial rights impermissibly where the court also provided the jury with the appropriate standard).

the defense attorney's argument was that Vanderpool was admitting the only crime of which he was guilty.

In response to this argument, the prosecutor countered that Vanderpool had been upfront about his revoked license because he knew that it was not hard for the officer to discover that his license was revoked. The prosecutor then argued that "the fact that they're stipulating this, and saying oh, he, you know, he did do this one is just to detract [sic] you from the idea that he committed the rest of them. They're saying we're being —"

At this point, the defense attorney objected, arguing that the prosecutor was improperly disparaging the defense. Following a bench conference, the superior court overruled the objection. The prosecutor then briefly noted that the jury "should take into consideration what I just said," and the prosecutor moved on to the rest of her rebuttal argument.

On appeal, Vanderpool renews his objection. He argues that the prosecutor was improperly denigrating the defense and suggesting that the defense was engaged in trying to distract the jury from the truth. We conclude that any error in failing to sustain the objection was harmless given the brevity of the prosecutor's statements and her willingness to move on to other arguments.[27]

*Conclusion*

Because the superior court failed to obtain Vanderpool's personal jury trial waiver of the prior convictions element, the felony convictions for driving under the influence and refusal are VACATED. This case is REMANDED to the superior court to allow the State to elect whether to retry Vanderpool on those felony charges. If the State elects not to retry Vanderpool, the superior court shall enter convictions for

---

[27] *Rogers v. State*, 280 P.3d 582, 589 (Alaska App. 2012) (explaining that challenged statements in a closing argument are reviewed "in the context of the record as whole").

misdemeanor driving under the influence and misdemeanor refusal and resentence Vanderpool on these misdemeanor convictions. In all other respects, the judgment of the superior court is AFFIRMED.